UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:08-CV-28

VICKI HURLEY and
DAVID HURLEY                                                          PLAINTIFFS

v.

JEFFREY W. BYASSEE, KENNETH R. BYASSEE,
JEFFREY W. BYASSEE as Executor of the Estate of
RUSSELL W. BYASSEE, Deceased, LISA BYASSEE
and GINGER BYASSEE                                                   DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Plaintiffs' Motion for Partial Summary Judgment

(Docket #25).  Defendants have responded (Docket #55).  Plaintiffs have replied (Docket #61).

This matter is now ripe for adjudication.  For the following reasons, Plaintiffs' Motion for Partial

Summary Judgment is DENIED.

## BACKGROUND

Plaintiff Vicki Hurley, Defendant Jeffrey Byassee, and Defendant Kenneth Byassee are

the children of Russell and Patricia Byassee, both deceased.  Russell and Patricia held three

tracts of land as tenants in common in Hickman County, Kentucky.  The parties have referred to

these tracts as the "Patricia Byassee Tract," the "Jeff Byassee Tract" (owned jointly by

Defendant Jeffrey Byassee), and the "O'Dell Tract."  Defendants state that the Patricia Byassee

Tract is actually three farms: the Jackson Place, the Flinchem Place, and the Floyd Place.  The

deeds to these farms were recorded to Jack Byassee (Russell's brother) for life with remainder to

Russell Byassee.  All three deeds in the collective "Patricia Byassee Tract" were recorded in

1959, one year before Patricia and Russell were married.  In 1980, litigation before the Hickman

Circuit Court resulted a finding that Jack Byassee had perpetrated a fraud on his brother in

recording the deeds.  When the Master Commissioner made the new deeds for the three farms in the Patricia Byassee Tract, he made them to Russell and Patricia Byassee, with no rights of survivorship.

Russell Byassee, Jeffrey, and Kenneth were partners in a farming operation on their real estate in Hickman County, Kentucky.  Jeffrey asserts that since 1985 all of the real estate titled in the name of any partner was contributed to the partnership, Byassee Farms.  Taxes were split in thirds between the partners, and the partnership continued after Patricia's death in 1987.  No rent was paid to the title holders of the real estate, and any income from the partnership was used to pay for or improve the land, or for equipment.  Vicki asserts that no formal partnership existed prior to Patricia's death.  Both parties acknowledge that Vicki had very little to do with the farming operations, and did not receive any net profits.

When Patricia died intestate in 1987, Vicki asserts that she inherited a one-sixth interest in these tracts, i.e., one-twelfth of the O'Dell and Patricia Byassee tracts and one-eighteenth of the Jeff Byassee tract.  Vicki claims at that time she was only seventeen years old and did not know she had inherited this vested interest.  Furthermore, Vicki states she did not become aware of her interest until her attorney informed her of it nearly two decades later.  In fact, both Jeffrey and Kenneth acknowledge that they were also unaware the three children had inherited any interest from their mother.

After her mother's death, Vicki's relationship with her father became strained.  Sometime in the spring of 1988, Vicki and Russell had an argument over money Vicki wanted to pay for college.  Prior to Patricia's death, two bank accounts existed in Vicki and Patricia's names.  The money in these accounts came from Patricia's earnings from her job with Goodyear.  After

Patricia's death, Russell had Vicki add his name to the accounts.  Vicki then withdrew $8,000 from one of these accounts to pay for college, although Russell told her it was not her money to take.  Jeffrey and Kenneth were present at this "meeting" between Vicki and Russell, and allege that Russell told Vicki to return the money or keep it in lieu of her farmland inheritance.  Jeffrey and Kenneth  also allege that Vicki decided to keep this cash with the understanding that she was forfeiting any interest in the family's real estate.  Vicki asserts that she never agreed to convey any of her real property interests inherited from her mother.  Both parties agree that no writing exists to document these affairs.

Vicki sued her father, Russell Byassee, in the Hickman Circuit Court in 1988 to recover money and a car that Patricia had set aside for Vicki before she died.  Vicki was eighteen at the time, and was represented by attorney L.M. Tipton Reed, Jr.  During depositions taken in 1989, Russell Byassee stated that the Patricia Byassee Tract and the O'Dell Tract were not owned by Russell and Patricia with rights of survivorship when Patricia passed away.  This implies that Patricia's share would have passed intestate.  Vicki denies any knowledge of her interest at this time, and claims that her attorney did not inform her of the meaning of Russell's statements.

Russell Byassee eventually remarried a woman named Hazel Byassee.  Following this marriage, in a deed dated July 14, 2003, Russell conveyed the O'Dell Tract, the Patricia Byassee Tract, and the Jeff Byassee Tract to Jeffrey and Kenneth.  All three Byassee children were still unaware they had inherited an interest in the land from their mother.  In 2004, Russell died testate, leaving his estate in equal shares to Jeffrey, Kenneth, and Vicki.  Hazel Byassee sued the three children in Hickman Circuit Court to obtain her marital interest in Russell's estate.  At this point in time, Jeffrey and Kenneth (but not Vicki) signed the following agreement:

3

>       JEFFREY W. BYASSEE and KENNETH R. BYASSEE, for and in
> consideration of resolving the litigation related to the Estate of Russell W.
> Byassee and in consideration of the agreement of their sister, VICKI JO
> HURLEY, not to file any cross claim against them, and in complying with the
> intent of their father, Russell W. Byassee, agree that after the payment of any
> income taxes, any balances due Mrs. Hazel Byassee and the portion of the cost of
> any litigation relating to the personal intangible property hereinafter set out, the
> intangible personal property, including dividends, interest or growth, will be
> divided one-third (1/3) each among JEFFREY W. BYASSEE, KENNETH R.
> BYASSEE and VICKI JO HURLEY . . . THIS AGREEMENT is binding upon
> the undersigned, their heirs, successors, administrators and assigns.

This agreement was prepared by Jeffrey and Kenneth's attorney, signed, and delivered to Vicki's

attorney.  Vicki did not sign and return the agreement.  The agreement references Russell

Byassee's bank and investment funds.  In particular, there were four accounts in existence upon

Russell Byassee's death: (1) First Community Bank Certificate of Deposit titled Russell W.

Byassee or Jeffrey W. Byassee or Kenneth R. Byassee in the amount of $16,219.08; (2) Lincoln

Financial Groups/Bentley Beard Investment Account in the name of Russell W. Byassee but

payable on death 50% to Kenneth R. Byassee and 50% to Jeffrey W. Byassee; (3) Peoples

Choice Credit Union Account in the amount of $5,800.00 in the name of Russell W. Byassee

listing as beneficiary Kenneth R. Byassee; (4) Allianz Life Insurance Company of North

America/Goodyear Retirement Account in the amount of $4,800.00 in the name of Russell W.

Byassee listing as beneficiary Jeffrey W. Byassee.

       Vicki asserts that no cross claims were filed in the Hazel Byassee lawsuit.  The lawsuit

was settled, but Vicki never received any share of the bank and investment accounts.  Vicki

asserts that Jeffrey and Kenneth refused to distribute her share of the bank and investment

accounts unless she quit-claimed her interest in the real estate.  Vicki then filed the present

action, in which she seeks partition of the real estate and a one-third share of the investment

4

accounts.  Jeffrey and Kenneth have counterclaimed.  Vicki now seeks partial summary judgment on her claims.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact."  *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case.  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate."  *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed.

5

R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

Plaintiffs assert that partial summary judgment is appropriate because Vicki has a vested interest in the three tracts of land, there is no writing conveying her interest in this land, and she is therefore entitled to a partition of the property via judicial sale.  In addition, Plaintiffs ask this Court to find that they are entitled to a one-third interest in the intangible bank and investment accounts plus interest, based on the written agreement entered into by Jeffrey and Kenneth in 2004.  The Court addresses the real property and intangible property issues separately.

**I.      Interest in Real Property**

Plaintiffs urge the Court to find that Vicki has an interest in the three tracts of land, grant partial summary judgment on this issue, and order a partition of the real estate by judicial sale. In support of their argument, Plaintiffs claim that the alleged agreement between Vicki and her father is invalid.  First, Plaintiffs assert that even if there was an agreement in which she gave up her interest in the land, a contract by a minor may be voided.  "Ordinarily, a contract executed by a minor is enforceable by the minor but may be avoided by the minor if not affirmed by him after reaching adulthood." *Mitchell By and Through Fee v. Mitchell*, 963 S.W.2d 222, 223 (Ky. Ct. App. 1998).  Kentucky defines a minor as "any person who has not reached the age of eighteen (18)." Ky. Rev. Stat. Ann. § 387.010.  The parties disagree as to whether Vicki was seventeen or eighteen at the time the agreement was made, and neither party provides the exact date on which the meeting took place.  Whether Vicki was a minor on the date of the alleged agreement, and

whether she ratified the alleged contract after reaching the age of majority are questions of material fact best left to the jury.

    A.    *Statute of Frauds and Partnership Property*

Plaintiffs also argue that Kentucky's statute of frauds prevents Defendants from asserting that Vicki ever transferred her interest in the three tracts of land referenced above.  There is neither a written agreement nor a deed conveying Vicki's interest in the property.  According to Kentucky's statute of frauds, "No action shall be brought to charge any person . . . [u]pon any contract for the sale of real estate . . . unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged therewith . . . ."  Ky. Rev. Stat. Ann. § 371.010.  In this case, both parties admit that no writing exists documenting an agreement between Russell and Vicki in which Vicki agreed to keep the money she had taken for college in lieu of her interest in the real estate.  Therefore, unless Defendants can assert some reason why the statute of frauds should not apply, the agreement is invalid.

Defendants argue that the agreement is not subject to the statute of frauds because a genuine issue of material fact exists as to whether or not all three tracts of land were considered partnership property, contributed to the Byassee Farms partnership prior to Patricia Byassee's death.  "All property originally brought into the partnership stock or subsequently acquired by purchase or otherwise, on account of the partnership, is partnership property."  Ky. Rev. Stat. §362.185.  If the three tracts are deemed property of Byassee Farms, they are considered personalty instead of realty, and the statute of frauds does not apply.  *See Ewing v. Clore*, 292 S.W. 824, 825 (Ky. 1927).  Whether property is considered "partnership property" depends upon

"the intention of the parties." *Curtis v. Campbell*, 336 S.W.2d 355, 358 (Ky. 1960). Defendants correctly note that intent is a question of fact. *See Perry v. Motorists Mut. Ins. Co.*, 860 S.W.2d 762, 765 (Ky. 1993). In this case, earnings from the partnership were used to make annual payments on the land and for improvements, maintenance, and upkeep. Taxes and insurance costs were paid by the partnership. Therefore, a question remains as to whether Russell, Jeffrey, and Kenneth intended that the three tracts of land be considered partnership property, and whether a partnership was even in existence prior to Patricia's death.

It is irrelevant if legal title is in the name of a non-partner; equitable title may still be transferred to the partnership if such is the intent of the parties. *See Waterbury v. Waterbury*, 128 S.W.2d 568, 570-71 (Ky. 1939); *accord Proctor v. Hearne*, 131 So. 173, 177 (Fla. 1930) ("Where real estate is acquired in a partnership business, and for partnership purposes, it will be treated as partnership property, though the legal title be taken in the name of one of the partners or in the name of a stranger."); *King v. Evans*, 791 S.W.2d 531, 533 (Tex. App. 1990) ("The fact that the deed to the land was taken in [partner and nonpartner wife's] names is not conclusive in determining whether the land was a partnership asset.").

If the land held in Patricia and Russell's names is deemed partnership property, Patricia would have held legal title as trustee for the partnership. *See Betts v. Smither*, 220 S.W.2d 989, 992 (Ky. 1949); *Cain's Adm'r v. Hubble*, 211 S.W. 413, 417 (Ky. 1919) ("The holder of the legal title will be considered a trustee for the partnership."); *accord Korziuk v. Korziuk*, 148 N.E.2d 727, 729 (Ill. 1958) (""[T]he party holding the legal title will be regarded as holding it subject to a resulting trust in favor of the firm furnishing the money."). When a partner dies with legal title to partnership property, "the title of the deceased partner vests in his heirs at law,

8

subject to the equitable rights of the firm." *Carter v. Flexner*, 17 S.W. 851, 853 (Ky. 1891); *accord Savings & Loan Corp. v. Bear*, 154 S.E. 587, 594 (Va. 1930) ("[E]ach partner holds the legal title . . . in trust for the partnership, at least, so far as may be necessary to pay the partnership debts and adjust the equities between the partners . . . ."). The Court believes it is fair to apply this same reasoning to a situation in which a stranger to the partnership holds legal title in trust for the partnership. Therefore, the three Byassee children inherited equal shares of Patricia's interest. So long as the property was thereafter used for partnership purposes, the property was still considered personalty after Patricia's death because the partnership retained its equitable rights in the land. It follows that Vicki's alleged agreement with Russell would not have been subject to the statute of frauds. In addition, Vicki still retains an interest in the partnership, and may be entitled to partition the land when the three tracts are no longer being used for partnership purposes, as title reverts back to its original form as realty. *Carter*, 17 S.W. at 853; *accord Miller v. Howell*, 234 S.W.2d 925, 929-30 (Tex. Civ. App. 1950) ("[W]hen the land is no longer needed for partnership purposes, it is relieved of the trust implied from the partnership relation, and all the ordinary incidents and qualities of the real estate revive.").

The Court also notes that if a partnership still existed between Russell, Jeffrey, and Kenneth at the time of *Russell's* death, then Vicki inherited one-third of her father's interest in the partnership as well. Russell's will left his estate in equal shares to his three children. Included in this estate is Russell's partnership interest. "A partner's interest in the partnership is his share of the profits and surplus, and the same is personal property." Ky. Rev. Stat. Ann. § 362.275. Unless Russell retired from the partnership before his death in 2004, he is considered a deceased partner. The death of a partner generally results in the dissolution of the partnership.

9

Ky. Rev. Stat. Ann. § 362.300(4).  However, when no partner compels liquidation pursuant to Section 362.335, the remaining partners may continue the partnership as a new partnership.  Ky. Rev. Stat. Ann. §§ 362.335, 362.355.  Under Section 362.355, however, the deceased partner's estate is entitled to "the value of [the deceased partner's] interest in the dissolved partnership with interest" or the value of his interest plus "the profits attributable to the use of his right in the property of the dissolved partnership."  Ky. Rev. Stat. Ann. § 362.355.  Therefore, if a partnership existed, Vicki is entitled to recover a portion of this value through Russell's estate.

Assuming a partnership existed, the transfer of title from Russell to Jeffrey and Kenneth in 2003 was valid to convey an equitable interest to his sons, but did not convey legal title.  Ky. Rev. Stat. Ann. § 362.195.  Under Section 362.195, "[w]here the title to real property is in the name of one (1) or more or all the partners, or in a third person in trust for the partnership, a conveyance executed by a partner . . . passes the equitable interest of the partnership . . . ."  *Id.* Russell could not convey legal title because Patricia's name was still on the deeds.

In conclusion, if the jury finds that a partnership existed and the three tracts of land were considered partnership property, summary judgment is inappropriate.  Because the land may potentially be considered partnership property, Vicki does not have a right to partition the land at this time.  Instead, she retains an interest in the partnership, which she inherited from her mother, and may be entitled to receive a share of the partnership's income.  Moreover, if a partnership existed between Russell and his two sons at the time of Russell's death, Vicki is also entitled to the value of the one-third interest in the partnership which she inherited from her father, plus interest or profits.  The existence of the partnership and intent of the parties are matters that require contemplation by the jury, and may not be decided on summary judgment.

10

B.      *The Alleged Agreement and Equitable Remedies*

In contrast, if the jury were to find that no partnership existed, or the land was not intended as partnership property, summary judgment would be appropriate.  Whether the statute of frauds applies to the alleged agreement or not is irrelevant, since the Court finds that an enforceable contract was never formed at the time of the alleged agreement.  According to Defendants, Vicki and Russell's names were both on the bank account, and Vicki withdrew $8,000.00 from that account.  Russell tried to make Vicki put the money back.  If she did not, she could keep the money in lieu of her interest in the real estate.  Defendants claim that Vicki agreed to this deal.  Even assuming all that Defendants have asserted is true, there was a lack of consideration between Vicki and Russell to find that a contract was properly formed.  "Where an agreement is founded solely upon reciprocal promises, unless each party has assumed some legal obligation to the other the contract is wanting in consideration and is lacking in mutuality." *David Roth's Sons, Inc. v. Wright & Taylor, Inc.*, 343 S.W.2d 389, 390 (Ky. 1961).

Vicki had a preexisting legal right to take money from the bank account because the account was in her name.  A joint bank account is defined as "an account payable on request to one (1) or more of two (2) or more parties whether or not mention is made of any right of survivorship."  Ky. Rev. Stat. Ann. § 391.300.  Prior to Patricia's death, the bank account was in her name as well as Vicki's.  While both parties are living, a joint bank account belongs "to the parties in proportion to the net contributions by each to the sums on deposit . . . ."  Ky. Rev. Stat. Ann. § 391.310.  Upon one party's death, the amount remaining passes to the surviving party absent clear and convincing evidence of some other intention.  Ky. Rev. Stat. Ann. § 391.315; *Herren v. Cochran*, 697 S.W.2d 149, 152 (Ky. Ct. App. 1985).  The money in the bank account

11

held in Patricia and Vicki's names passed to Vicki upon Patricia's death.  The fact that Russell

may have later added his name to the bank account is inconsequential.  The money in that

account was Vicki's, and Russell had not deposited any additional money into the account.

Therefore, under Kentucky law, Russell had no interest in the money since he had not made any

net contributions to the account.  *See* Ky. Rev. Stat. Ann. § 391.310.

"'There is no consideration for a promise where no benefit is conferred upon the

promisor nor detriment suffered by the promisee.'" *Moore v. Kuster*, 37 S.W.2d 863, 864 (Ky.

1931) (quoting *McDevitt v. Stokes*, 192 S.W. 681, 682 (Ky. 1917)).  Although it is alleged Vicki

gave up her right to any interest in the real estate, she received no benefit, and Russell suffered

no detriment.  "Benefit" means the promisor (Vicki) "acquired some legal right to which [s]he

would not otherwise have been entitled."  *Huff Contracting v. Sark*, 12 S.W.3d 704, 705 (Ky. Ct.

App. 2000) (internal citation omitted).  Vicki was already entitled to the $8,000.00 she took from

the bank account with her name on it.  Furthermore, Russell did not suffer any detriment, i.e.,

forbear "some legal right which he otherwise would have been entitled to exercise," because he

did not have a legal right to prevent Vicki from taking the $8,000.00.  *Id.*  Therefore, the Court

finds that there was no mutuality of obligation, and thus, no contract was formed.

In the absence of a contract, Defendants must rely on equitable remedies.  First,

Defendants assert that a constructive trust should be created in their favor because they have

made valuable contributions in the form of money, labor and materials to the tracts of land at

issue, under the expectation that they owned those assets.  Defendants believe they can prove it

was Russell Byassee's intention that all of the real estate go to Jeffrey and Kenneth, and that

Vicki would receive cash instead.  Vicki has not contributed to the three tracts of land or the

partnership.  Defendants assert that enforcement of a constructive trust is not subject to the statute of frauds, and that summary judgment is not appropriate.

"When legal title to property has been acquired or held under such circumstances that the holder of that legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Keeney v. Keeney*, 223 S.W.3d 843, 849 (Ky. Ct. App. 2007) (citing *Middleton v. Beasley*, 216 S.W. 591, 592 (Ky. 1919)).  The imposition of a constructive trust is generally used by courts where property "has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it." *Kaplon v. Chase*, 690 S.W.2d 761, 763 (Ky. Ct. App. 1985) (quoting *Hull v. Simon*, 128 S.W.2d 954, 958 (Ky. 1939)).   In other words, the injured party need not demonstrate actual fraud. *Id.* A constructive trust may arise where it is demonstrated that "the holder of the legal title obtained it through fraud, misrepresentation, concealments, undue influence, duress, or some other wrongful act whereby another is deprived of the title to his property." *Lowe v. Lowe*, 229 S.W.2d 442, 443 (Ky. 1950) (quoting *Dotson v. Dotson*, 209 S.W.2d 852, 853 (Ky. 1948)). Because a constructive trust does not lie in contract, the statute of frauds does not apply. *O'Bryan v. Bickett*, 419 S.W.2d 726, 728 (Ky. 1967).

Defendants argue that a constructive trust was created by contribution of the property to Byassee Farms with the expectation that it would go to Jeffrey and Kenneth, and the alleged agreement between Vicki and her father that Vicki would take cash in lieu of her interest in real estate.  Vicki allegedly concealed her ownership interest while Jeffrey and Kenneth continued to believe that the land was partnership property and would pass to them.  Vicki argues that Jeffrey and Kenneth were on notice of her interest because it was a matter of public record, evidenced

13

by the deeds and the Affidavit of Descent recorded in the Hickman County Clerk's office. Neither party alleges that Vicki obtained lawful title by means of fraud or any other unconscionable act.  The issue, therefore, is whether Vicki "may not in good conscience retain the beneficial interest" of the land.  *See Keeney*, 223 S.W.3d at 849.  Viewing the evidence in a light most favorable to the Defendants, the Court believes that Defendants cannot assert a proper claim for a constructive trust.  Defendants have not alleged that Vicki committed any wrongful act that should prevent her from retaining her interest in the land.  Concealment is not a proper argument because Vicki's interest was a matter of public record.

Defendants also assert that equitable estoppel keeps Plaintiffs from asserting their interest in the land.  Defendants allege that Vicki remained silent for over 20 years and did nothing to indicate she intended to claim any interest in the land.  In addition, Defendants believe Vicki knew or should have known of her interest as early as 1989 when her lawyer became aware of Russell's statements at his deposition.  Moreover, Defendants allege that Vicki knew Jeffrey and Kenneth would continue making improvements on the land.  Jeffrey and Kenneth assert that they reasonably relied on Vicki's silence and were unaware of her interest in the land.  Plaintiffs argue that estoppel is improper because Defendants had notice of Vicki's interest through public record.

A party may be estopped from asserting a claim inconsistent with their prior words or conduct, if the other party has relied upon that prior position to their detriment.  *CSX Transp., Inc. v. First Nat. Bank of Grayson*, 14 S.W.3d 563, 568 (Ky. Ct. App. 1999) (citing *Hicks v. Combs*, 223 S.W.2d 379 (Ky. 1949).  The elements of estoppel include:

> (1) Conduct, including acts, language and silence, amounting to a representation or concealment of material facts; (2) the estopped party is aware of these facts; (3)

14

these facts are unknown to the other party; (4) the estoped party must act with the intention or expectation his conduct will be acted upon; and (5) the other party in fact relied on this conduct to his detriment.

*U.S. Achievement Academy, LLC v. Pitney Bowes, Inc.*, 458 F. Supp. 2d 389, 408 (E.D. Ky. 2006) (quoting *Gray v. Jackson Purchase Prod. Credit Ass'n*, 691 S.W.2d 904, 906 (Ky. Ct. App. 1985)).  Equitable estoppel is rarely applied to transfer title: "[O]nly in rare instances has one vested with title been estopped to assert his claim . . . and only then when the rights of innocent parties have been affected adversely by the conduct of the titleholder."  *Huddleston v. Huddleston*, 265 S.W.2d 942, 944 (Ky. 1954).  Mere silence or acquiescence is not enough when legal title is at issue.  *Coleman v. Republic Steel Corp.*, 280 S.W.2d 171, 173 (Ky. 1955); *Embry v. Turner*, 185 S.W.3d 209, 216 (Ky. Ct. App. 2006).  The party asserting estoppel must prove "an actual fraudulent representation, concealment or such negligence as will amount to a fraud in law, and that the party setting up such estoppel was actually misled thereby to his injury."  *Jones v. Travis et al.*, 194 S.W.2d 841, 842 (Ky. 1946).

The Court does not believe that Defendants can meet this burden.  At the time Vicki entered into the alleged agreement with her father, she had no knowledge of her vested rights in the property.  Therefore, the argument that Vicki is estopped because of this agreement fails under the second part of the estoppel test.  Defendants argue that Vicki gained knowledge in 1989 through her attorney and thereafter concealed her interest from Jeffrey and Kenneth.  There is no evidence presented that Vicki was informed by her attorney that she had any interest in the three tracts of land at issue.  Even if, as Defendants claim, this knowledge was imputed to Vicki through her attorney, part four of the estoppel test requires that the estopped party intended or expected his or her conduct to be relied upon by the opposing party.  Defendants cannot show

15

that Vicki had the requisite intent if Vicki's knowledge was merely imputed to her. She innocently entered into an oral agreement, without full knowledge of her rights. Afterwards, Vicki never took any action to induce Defendants into reliance.   Her mere silence is simply not enough.

In the alternative, Defendants assert that they should be entitled to recover the value of their contributions to the land under a theory of unjust enrichment.  Defendants argue that Vicki would be unjustly enriched because she has not made any contributions to the land.  Plaintiffs argue that Defendants cannot claim unjust enrichment because Jeffrey and Kenneth have "unclean hands."  *See, e.g.*, *Sherman v. Sherman*, 160 S.W.2d 637, 638 (Ky. 1942).  Vicki asserts that she was never paid rent, never received any farm profits, and never received farm subsidy payments.

"Recovery under the theory of quantum meruit can be had regardless of the absence of an enforceable contract."  *Quadrille Business Systems v. Kentucky Cattlemen's Assoc., Inc.*, 242 S.W.3d 359, 365 (Ky. Ct. App. 2007).  "[O]ne who in good faith, believing herself to be the actual owner of the land, erects a building on the land of another may recover from the true owner . . . the amount by which the improvement has enhanced the value of the land, not exceeding the cost . . . ."  *Frazier v. Frazier*, 264 S.W.2d 665, 666 (Ky. 1954); *Stepp v. Leslie*, 263 S.W.2d 122, 123 (Ky. 1953).  If the Court finds good faith, a lien for the increased value of the land may be granted to the party who made the improvements.  *Id.*  Plaintiffs allege that Defendants had either actual or record notice of Vicki's interest in the land and therefore could not have acted in good faith.  Even if Plaintiffs are correct that Defendants had notice, however, Defendants may reasonably have believed that Vicki had previously disclaimed her interest in

16

the land.  Therefore, the Court believes that whether Defendants acted in good faith is a question of material fact to be decided by the jury.

Even if Defendants acted in good faith, they may not recover if the doctrine of unclean hands applies.  "He who comes into equity must come with clean hands . . . ."  *Maas v. Maas' Adm'r*, 255 S.W.2d 497, 498 (Ky. 1953).  The doctrine of unclean hands serves as "an absolute bar to equitable relief . . . ."  *Norsworthy v. Kentucky Bd. of Med. Licensure*, 2009 WL 1441023, n.7 (Ky. 2009) (citing *Time Finance Co. v. Varney*, 253 S.W.2d 233 (Ky. 1952)).  The doctrine is limited to conduct connected to the subject matter of the litigation.  *Maas*, 255 S.W.2d at 498. The conduct by the party with unclean hands must be "fraudulent, illegal, or unconscionable" for the Court to find that he is barred from equitable relief.  *Dunscombe v. Amfot Oil Co.*, 256 S.W. 427, 429 (Ky. 1923) ("[I]f it be such as 'would be condemned and pronounced wrongful by honest and fair minded men,' it will be sufficient to render the hands of the litigant unclean within the meaning of the maxim.").  According to the U.S. Supreme Court, "[a]ny willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim . . . ."  *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806, 815 (1945).

The Court believes that whether Jeffrey and Kenneth's non-payment of rent and profits to Vicki was willful conduct is a genuine issue of material fact.  Jeffrey and Kenneth may have believed that the land was partnership property, and the profits from that partnership were put back into the land for the good of the partnership.  As noted earlier, however, whether Defendants intended to carry on as a partnership is a question for the jury's determination.  Also, Defendants' beliefs as to ownership of the real estate are in question much as they are in the

17

good faith analysis. Therefore, a genuine question of material fact as to unclean hands remains as well.  It is for the jury to decide whether Defendants wilfully withheld profits, rents, or government subsidies from Vicki.

The Court finds it difficult at this stage in the proceedings to determine bad faith or unclean hands on the part of either party in such a case where the parties' beliefs and intentions are so essential to the outcome of the litigation.

C.      *The Patricia Byassee Tract*

Finally, Defendants argue that Patricia Byassee's name should not have been put on the deeds for the Patricia Byassee Tract farms.  Defendants instituted a lawsuit in Hickman Circuit Court (case number 09-CI-00054) to reform the deeds to reflect a clerical error made by the Master Commissioner.  The Findings of Fact of the Court in the 1980 lawsuit between Jack Byassee and Russell Byassee state that the deeds should be in Russell Byassee's name, with no mention of Patricia's name being included on the deeds.  Defendants argue that if the deeds are reformed, Patricia would not have had an interest in the land, and no fractional interest would have passed to Vicki.  Therefore, Defendants assert, a question of material fact exists as to whether Vicki has a fractional interest in the Patricia Byassee Tract.

The Court finds that a material question exists as to whether Vicki actually had an interest in the Patricia Byassee Tract to transfer at the time of the "family meeting."  If Defendants are able to show that the deeds to the farms in the Patricia Byassee Tract should have been granted only in Russell Byassee's name, then Vicki would never have inherited an interest in the land from her mother. *See Nichols v. Nichols*, 205 S.W. 953, 954 (Ky. App. 1918) ("It may be conceded that a deed conveying land to a married woman and her husband jointly may

18

be reformed after her husband's death and against his heirs, where it appears that her husband's name was inserted in the deed by the mistake of the scrivener.").  In addition, Vicki would not have inherited this interest from her father, who transferred his interest in the three tracts of land to Jeffrey and Kenneth in 2003.  Therefore, if the Hickman Circuit Court reforms the deeds and quiets title in favor of Jeffrey and Kenneth, Vicki could end up with no interest in the Patricia Byassee Tract.  In light of these facts, the Court believes that a stay is necessary, at least as to the Patricia Byassee Tract, until the Hickman Circuit Court has entered its decision in case number 09-CI-00054.  Inherent in every court is the power to manage its docket and stay proceedings. *Landis v. North American Co.,* 299 U.S. 248, 254 (1936).  Therefore, a stay is ordered and Defendants shall inform the Court of the Hickman Circuit Court's decision.

## II.    Intangible Property

Plaintiffs assert that Defendants have wrongfully withheld performance of their obligation under their written agreement which promised Vicki one-third of the bank and investment accounts.  Plaintiffs assert that Vicki fulfilled her obligation under the contract by not filing any cross claims against Jeffrey or Kenneth in the Hazel Byassee litigation, but Defendants failed to perform.  Plaintiffs believe partial summary judgment should be granted because Defendants' refusal to perform is based on an alleged oral agreement that Vicki would also give up her interest in the real estate.  However, the written agreement makes no mention of real estate, and Plaintiffs believe the document should be enforced as written.

Defendants argue that the "agreement" is unenforceable because Vicki never signed it, nor did she ever communicate her acceptance of the agreement to the Defendants.  Therefore, there was no acceptance and no contract was formed.  In the alternative, Defendants argue that

19

even if a contract existed, Vicki breached that contract by filing the present claim and by not complying with the intent of Russell Byassee that she give up her interest in the real estate in exchange for her one-third interest in the bank and investment accounts.

Formation of a contract generally requires an offer, acceptance of that offer, and bargained-for consideration.  Restatement (Second) of Contracts § 17; *Cuppy v. General Acc. Fire & Life Assur. Corp.*, 378 S.W. 2d 629, 632 (Ky. 1964) ("Every contract requires mutual assent and consideration . . . .").  As to the presently litigated agreement, the May 1, 2006, document which was signed by Jeffrey and Kenneth and sent to Vicki's lawyer represents the offer.  Jeffrey and Kenneth made a promise to distribute a one-third share of their father's bank and investment funds to Vicki after Hazel Byassee's lawsuit was settled in exchange for a promise by Vicki not to file any cross claim against them.  Viewed in a light most favorable to the Defendants, there is no evidence that Vicki ever accepted this agreement.  She did not sign the agreement, nor does she remember if she ever communicated her acceptance in any other form.  Acceptance by silence is rarely enough to satisfy the requirement of mutual assent.  *See* Restatement (Second) of Contracts § 69 cmt. a.  Therefore, the Court finds that a genuine issue of material fact exists as to whether or not Vicki accepted the agreement, and summary judgment is inappropriate at this time.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment is **DENIED.** This case is stayed in its entirety until the Hickman Circuit Court has entered its decision in case number 09-CI-00054.  Defendants shall notify the Court.  As an aside, the Court notes that parts of this case read more like a hypothetical question on a bar examination.  It combines

appreciation of real estate, partnership, intestacy and trust laws.  The application of the facts, claimed intentions, and various theories as set forth by the parties to the law was a complicated task.  In this scenario of a family dispute of such a complex nature, it begs for the parties to again attempt to mediate this claim.  Otherwise, the Court fears the parties run the risk of additional claims and cross claims being pled, appeals, delay and cost possibly disproportionate to any claims.